THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF THE UNITED STATES, PLAINTIFFS IN ERROR v. WILLIAM S. HATCH, DEFENDANT IN ERROR.

A suit was instituted by the bank against Pearson, the drawer of a bill of exchange indorsed by Hatch, which suit stood for trial at an approaching term. The attorney and agent of the bank agreed with Pearson, that the suit against him should be continued without judgment, until the term after that at which judgment would have been entered, if Pearson would permit a person in confinement under an execution at his suit, to attend a distant court as a witness for the bank, in a suit in which the bank was plaintiff. The witness was permitted to attend the court, and the suit against Pearson was continued agreeably to the said agreement. By the court: This was an agreement for a valuable consideration, and not a mere voluntary and discretionary exercise of authority on the part of the agent of the bank. It was a virtual discharge of the indorser of the bill.

The case of M'Lemore v. Powell, 12 Wheat. Rep. 584, cited and confirmed.

The notary public, on the non-payment of a bill of exchange, left a notice of the same for the indorser at a private boarding house, where the indorser lodged; Calling at the boarding house, and inquiring for the indorser of the bill of a fellow boarder, he was informed that he was not within, and he then left the notice with the fellow boarder, requesting him to deliver it to the indorser. Held, that this was sufficient notice to the indorser to make him liable for the payment of the bill.

ERROR to the circuit court of the United States for the district of Ohio.

This action was brought by the plaintiffs in error, in the circuit court of the United States for the district of Ohio, against William S. Hatch, by scire facias upon a judgment obtained against Elijah Pearson, in a suit brought against him and the said William S. Hatch, in which the marshal returned "not found," as to William S. Hatch.

The action was upon a bill of exchange, drawn by Elijah Pearson, and indorsed by William S. Hatch. The issue was joined upon the plea of non-assumpsit.

At the trial, the defendant offered in evidence a deposition of one John M. Ferry, to which the counsel of the plaintiffs objected, on the grounds stated in the opinion of the court; which objection was overruled by the court, and the deposition read. To this opinion of the court, the plaintiffs' counsel excepted.

The jury found the following special verdict, to wit: "and afterwards, to wit, at the December term of said court, in the year last aforesaid, came the parties, by their said attorneys; and thereupon, for trying the issue joined, came a jury, who found that E. Pearson made the bill of exchange, a copy of which is attached to the declaration of the said plaintiffs in the original suit against said Pearson, the drawer of said bill, and that the said bill was regularly indorsed by the present defendant Hatch. They also find, that on the 25th day of July in the year 1820, said bill of exchange was duly protested for non-payment, and that on said day last mentioned, and on the succeeding day, the said defendant Hatch was boarding at the house of Henry Bainbridge, in the city of Cincinnati; that on the 26th day of July in the year 1820, the notary public by whom said bill was protested called at the house of said Bainbridge, and inquired for said Hatch, and was informed by a Mr Young that said Hatch was not within; the said notary then left a written notice of said protest with said Young, who was at that time in the house aforesaid, and requested him to deliver said notice to said Hatch; and that in the summer of said year 1820, said Young was a boarder at said house. They also find, that a suit was commenced against said Pearson, the drawer, on said bill of exchange, which suit stood for trial at the September term in the year 1822, of the circuit court of the United States for the district of Ohio. They also find, that previous to the year 1822, one Griffin Yeatman was confined on the jail limits of Hamilton county in said state, on a 'capias ad respondendum,' issued at the instance of, and on a judgment in favour of said Pearson. That said Yeatman was a material witness for the plaintiffs in a number of suits then pending in said court; that one George W. Jones, who was the then agent for plaintiffs, and one William M. Worthington, the then attorney for the plaintiffs, agreed with the said Pearson, that, in consideration, he, the said Pearson, would permit the said Yeatman to leave the said jail limits, and attend said court during the term aforesaid, then the suit then pending in said court against said Pearson, on said bill of exchange, should be continued without judgment until the term of said court next ensuing said September term A. D. 1822. That, in pursuance of this agreement, the said Pearson permitted the

said Yeatman to leave said jail limits, and attend said court; and that said suit against said Pearson was continued agreeably to said agreement. Now, therefore, if upon this finding, the court shall be of opinion that the plaintiff is entitled to judgment, then the jury find for the plaintiff, to recover of the defendant the amount of said bill, together with the interest thereon; but if the court shall be of opinion upon the said finding, that the defendant is entitled to a judgment, then, and in that case, the jury find for the defendant."

Upon this special verdict, the court below gave judgment for the defendant, and the plaintiffs below thereupon prosecuted this writ of error.

The case was argued by Mr Sergeant and Mr Webster for the plaintiffs in error, and by Mr Ewing for the defendant.

For the plaintiffs in error it was contended, 1. That the notice of the non-payment of the bill of exchange was sufficiently proved. 2. That the plaintiffs had not discharged the indorser by the facts set forth in the special verdict.

1. The notice was sufficient. The notary public went to the house in which the indorser was a boarder, in the city of Cincinnati, and inquired if Mr Hatch was within, and was informed by Young, also a boarder in the house, that he was not; and the notary then left a notice of the non-payment of the bill with Young, and requested him to deliver the notice to Mr Hatch.

The law does not require a notice of the non-payment of a bill or note to be in writing; nor that it shall be given if the indorser cannot be found, and no one is at his residence, abode or place of business to receive it. In this case the indorser was not at home, and no agent was left who could receive the notice for him.

But a notice in writing was left at his residence, which is certainly sufficient. Stedman v. Gooch, 1 Esp. 4; Williams v. Bank U. S., 2 Peters, 96, 101. A lodger in a lodging house is in his dwelling, in contemplation of law; and this was the dwelling of Mr Hatch. If left with any one found in the lodging house, or at the house, it was a full compliance with the law.

2. As to the discharge of the indorser.

If the circumstances stated in the special verdict have operated to release the indorser, any delay in prosecuting a suit against the drawer will have the same effect. If a party becomes nonsuit, if he postpones his suit from the absence of testimony, or for any cause however immaterial to the merits of the case, the same effect will follow. The indorser has no right to insist on the institution of a suit, and he cannot therefore claim the benefit of any proceedings in a suit to which he was not a party, and with which he could not interfere. Even a stipulation not to sue the drawer, when it does not bind the indorser, and leaves him free to proceed upon the note or bill on his paying the holder the amount, will not release the indorser.

The agreement found by the special verdict did not operate on the debt. No time was given for its payment: it did not suspend the claim, the right of action, or the obligation: nor did it affect directly or indirectly any one but the drawer. By paying the debt, as the indorser should have done, he would have obtained an immediate right of action against the drawer.

The principles established by this court in the case of M'Lemore v. Powell, 12 Wheat. 554, are: before the parties to a bill or note are fixed by notice, *any laches* on the part of the holder will discharge the indorsers; after notice, *no laches* can be imputed, and no diligence is required. So also in Walwyn v. St Quintin, 1 Bos. & Pull. 654, per Eyre, C. J. This is therefore the established law.

In all cases where parties originally liable have been held discharged, either a new security has been given to the holder, or time given to such parties, to the prejudice of the rights of the parties held discharged. The allowance of time for the payment of the debt, must have been binding on all the parties, which was not done in this case. Collot v. Haigh, 3 Camp. 281; English v. Darby, 2 Bos. & Pull. 61; Clarke v. Devlin, 3 Bos. & Pull. 363; Bailey on Bills, 4th ed. 270, 274.

This is not a case of subrogation. The indorser could not have come into court, and having paid the holder of the bill, have prosecuted this suit against the drawer in the name of the holder. He could not, therefore, have been prejudiced by the agreement, as it did not suspend or impair his right of action.

[Bank of the United States v. Hatch.]

Mr Ewing, for the defendant in error, contended, that the notice was not sufficient to charge the indorser of the bill. Where parties to a note or bill reside in the same town, personal notice is required. 2 Peters, 101. The notice in this case was left with a stranger, and no diligence was used to find the indorser, Hatch, who was only a boarder at the house. If notice left with an agent would be sufficient, this was not done in the case before the court. The keeper of the boarding house might have been a proper person to receive the notice.

The agreement between the plaintiffs in error and the drawer of the bill, discharged the indorser. By the agreement the plaintiffs received a benefit; there was a consideration for it. They obtained the testimony of Yeatman, who was a material witness for them. It prejudiced the drawee of the bill, because it took from him his remedy against Pearson.

The court would have enforced the observance of this agreement. Had the plaintiffs proposed to take judgment, upon proof of this agreement, and its execution by the drawer of the bill, the court would have refused to enter judgment. Had the judgment been taken, upon application during the term, and proof of the facts, it would have been set aside and the cause continued. If these positions are correct, the indorser was discharged. The whole of the principles of the law on this matter have been decided in M'Lemore v. Powell, 12 Wheat. 554.

If Hatch, after the agreement, before the following term of the court, had applied to the plaintiffs and paid off the bill, he had a claim to be subrogated to their rights, which were to proceed with the suit against the drawer; but the plaintiffs had so tied up their hands that no judgment could have been taken at that term. They had thus, in the very words of the court in the case of M'Lemore v. Powell, suspended their own remedy so as to prejudice the rights of the indorser; and he must then be discharged.

Mr Justice STORY delivered the opinion of the Court.

This is a writ of error to the circuit court of Ohio.

The Bank of the United States, as holders, brought an action upon a bill of exchange, jointly against Elijah Pearson as drawer, and against William S. Hatch as indorser, under a

[Bank of the United States v. Hatch.]

statute of Ohio authorising such a proceeding. The marshal having returned the writ " not found" as to Hatch, the bank proceeded to take judgment against Pearson alone. The present suit is a scire facias against Hatch to make him a party to the same judgment, so that execution may also issue against him, according to the provisions of the same statute. The declaration and bill of exchange in the original proceedings have not been, as they ought to have been, sent up in the record, as they constitute a part of it; and for this imperfection a certiorari ought to have been awarded, if any thing material in it were now controverted by the parties. It appears from some exhibits in the proceedings, that the bill of exchange was dated at Cincinnati on the 23d of May 1820, and was as follows: " Sixty days after date hereof, pay to the order of William S. Hatch, at the office of discount and deposit of the Bank of the United States at Cincinnati, six thousand six hundred dollars, which charge to the account of, Yours, respectfully, E. Pearson." Addressed, " Mr Thomas Graham, Cincinnati, Ohio." It was indorsed by Hatch, and accepted by Graham. Hatch pleaded the general issue, non-assumpsit; and at the trial the jury found a special verdict, as follows:

" And afterwards, to wit, at the December term of said court, in the year last aforesaid, came the parties, by their said attorneys; and thereupon, for trying the issue joined, came a jury, to wit: William B. Van Hook, David Todd, John Larwell, Randall Stiver, Isaac N. Norton, A. R. Chase, Truman Beecher, J. R. Geddings, William Rayne, William A. Needham, Ira Paige, and William A. Johnson, who, being empannelled, elected, tried, sworn and affirmed to try the issue between the parties, upon their oath do say, *that E. Pearson made the bill of exchange, a copy of which is attached to the declaration of the said plaintiffs in the original suit against said Pearson, the drawer of said bill, and that the said bill was regularly indorsed by the present defendant Hatch.* They also find, that on the 25th day of July in the year 1820, said bill of exchange was duly protested for non-payment, and that on said day last mentioned, and on the succeeding day, the said defendant Hatch was boarding at the house of Henry Bainbridge, in the city of Cincinnati; that on the 26th day of July in the year 1820, the notary public

by whom said bill was protested called at the house of said Bainbridge, and inquired for said Hatch, and was informed by a Mr Young that said Hatch was not within; the said notary then left a written notice of said protest with said Young, who was at that time in the house aforesaid, and requested him to deliver said notice to said Hatch; and that in the summer of said year 1820, said Young was a boarder at said house. They also find, that a suit was commenced against said Pearson, the drawer of said bill of exchange, which suit stood for trial at the September term in the year 1822, of the circuit court of the United States for the district of Ohio. They also find, that previous to the year 1822, one Griffin Yeatman was confined on the jail limits of Hamilton county, in said state, on a 'ca. sa.,' issued at the instance of, and on a judgment in favour of, said Pearson. That said Yeatman was a material witness for the plaintiff in a number of suits then pending in said court; that one George W. Jones, who was the then agent for plaintiffs, and one William M. Worthington, the then attorney for the plaintiffs, agreed with the said Pearson, that, in consideration, he, the said Pearson, would permit the said Yeatman to leave the said jail limits, and attend said court during the term aforesaid, then the suit then pending in said court against said Pearson, on said bill of exchange, *should be continued without judgment until the term of said court next ensuing said September term, A.D. 1822.* That, in pursuance of this agreement, the said Pearson permitted the said Yeatman to leave said jail limits, and attend said court; and that said suit against said Pearson was continued agreeably to said agreement. Now, therefore, if upon this finding, the court shall be of opinion that the plaintiff is entitled to judgment, then the jury find for the plaintiff to recover of the defendant the amount of said bill, together with the interest thereon; but if the court shall be of opinion upon the said finding, that the defendant is entitled to a judgment, then, and in that case, the jury find for the defendant."

Upon this special verdict, the court below gave judgment for the defendant.

Two questions, arising out of the special verdict, have been argued at the bar. First, whether the notice to Hatch of the dishonour of the bill was sufficient. Secondly, if it was,

[Bank of the United States v. Hatch.]

whether the agreement between the bank and Pearson was a discharge of the indorser.

Upon the first point we are of opinion, that the notice was sufficient. In cases of this nature, the law does not require the highest and strictest degree of diligence in giving notice; but such a degree of reasonable diligence as will ordinarily bring home notice to the party. It is a rule founded upon public convenience, and the general course of business; and only requires that in common intendment and presumption the notice is by such means as will be effectual. In the present case, the notice was left at a private boarding house, where Hatch lodged; which must be considered, to all intents and purposes, his dwelling house. It was left, then, at the proper place; and if the delivery had been to the master of the house, or to a servant of the house, there could be no doubt that it would have been sufficient. Stedman v. Gooch, 1 Esp. Rep. 4. The notary called at the house, and upon inquiry of a fellow boarder and inmate of the house, he was informed that Hatch was not within; he then left the notice with the fellow boarder, requesting him to deliver it to Hatch.

The latter must necessarily be understood, by receiving the notice under such circumstances, impliedly to engage to make the delivery. The question then is, whether such a notice so delivered, does not afford as reasonable a presumption of its being received as if delivered to a tenant of the house. This is not like the case of a public inn, and a delivery to a mere stranger who happens to be there in transitu, and cannot be presumed to have any knowledge or intercourse with the party. Boarders at the same house may be presumed to meet daily, and to feel some interest in the concerns of each other, and to perform punctually such common duties of civility as this. In our large cities, many persons engaged in business live at boarding houses in this manner. It is not always easy to obtain access to the master of the house, or to servants, who may be safely entrusted with the delivery of notices of this sort. A person who resides in the house upon a footing of equality with all the guests, may well be supposed to feel a deeper interest in such matters, than a mere servant, whose occupations are pressing and various, and whose pursuits do not lead him

to place so high a value upon a scrupulous discharge of duty. We think that a stricter rule would be found inconvenient, and tend to subvert rather than to subserve the purposes of justice. No case exactly in point has been cited at the bar. That of Stedman v. Gooch, 1 Esp. Rep. 4, approaches near to it; but there the notice was left with the woman who kept the house at which the party was a lodger. No stress, however, seems to have been laid upon this circumstance to distinguish it from the case of a delivery to any other inmate of the house, either servant or fellow boarder.

The other question is one of more nicety, and not less important. It appears from the special verdict, that the contract with Pearson, for the continuance of the suit on this very bill, without judgment, until the next term of the circuit court, was for a valuable consideration, and not a mere voluntary and discretionary exercise of authority on the part of the agents of the bank. What, then, is to be deemed the true construction of it? Did it amount to no more than an agreement, that that particular suit should stand continued, leaving the bank at full liberty to discontinue that on the morrow, at their discretion, and to commence a new suit, and new proceedings for the same debt? Or was it intended by the parties to suspend the enforcement of any remedy for the debt for the stipulated period, and rely solely on that suit for a recovery? We are of opinion, that the intention of the parties apparent on the contract, was to suspend the right to recover the debt, until the next term of the court. It is scarcely possible that Pearson should have been willing to give a valuable consideration for the delay of a term, and yet have intentionally left avenues open to be harassed by a new suit in the interval. Indeed, no other remedy, except in that particular suit, seems to have been within the contemplation of either party. If the bank had engaged for a like consideration, not to sue Pearson on the bill for the same period, there could have been no doubt that it would be a contract suspending all remedy. What substantial difference is there between such a contract, and a contract to suspend a suit already commenced; which is the only apparent remedy for the recovery of the bill during the same period? Is it not the natural, nay necessary intendment, that the defendant shall have the full benefit of the whole pe-

riod as a delay of payment of the debt?  It is no answer that a new suit would be attended with more delay.    That might or might not be the case, according to the different course of practice in different states; and, at all events, it would harass the party with new expenses of litigation.    But the true inquiry is, whether the parties did or did not intend a surceasing of all legal proceedings during the period.    We think, that the just and natural exposition of the contract is that they did.

If this, then, be the correct exposition of the contract, the case clearly falls within the principle laid down by this court in M'Lemore v. Powell, 12 Wheat. Rep. 554.    That was the case of a voluntary agreement, without consideration, by the holder with the drawer of the bill for delay, after the parties had been fixed by due notice of the dishonour of the bill. The court held, that the agreement was not binding in point of law, and therefore it did not exonerate the indorser.    On that occasion the court said, "we admit the doctrine, that, although the indorser has received due notice of the dishonour of the bill, yet if the holder afterwards enters into any new agreement with the drawer for delay, in any manner changing the nature of the original contract, or affecting the rights of the indorser, or to the prejudice of the latter, it will discharge him.    But in order to produce such a result, the agreement must be one binding in law upon the parties, and have a sufficient consideration to support it," &c.    "If the holder enters into a valid contract for delay, he thereby suspends his own remedy on the bill for the stipulated period, and if the indorser were to pay the bill, he could only be subrogated to the rights of the holder, and the drawer could or might have the same equities against him, as against the holder himself.    If, therefore, such a contract be entered into without his assent, it is to his prejudice, and discharges him."    The same reasoning applies with full force to the present case.    If the bank could not have any remedy on the bill to recover payments, but was bound to wait until the next term of the circuit court, the defendant Hatch, as indorser, could not, by paying the bill place himself in a better situation.    He would be liable to the same equities, under the agreement suspending the remedy, as the bank.    The same principles which this court adopted in the

case of M'Lemore v. Powell, 12 Wheat. Rep. 554, will be found illustrated and confirmed in an able opinion of Mr Chancellor Kent, in King v. Baldwin, 2 Johns. Ch. Rep. 554, and applied to a case between principal and surety. There are other authorities to the same effect. Gould v. Robson, 8 East's Rep. 576; Laxton v. Peat, 2 Camp. Rep. 188; Hubbly v. Brown, 16 Johns. Rep. 70; Bayley on Bills, 234.

There is a recent case in England, which approaches very near to the circumstances of the present case. We allude to Lee v. Levi, 1 Carr. & Payne's Rep. 553. In that case the holder, after suit brought against the accepter and the indorser, had taken a cognovit of the accepter for the amount of the bill, payable by instalments; and at the trial of the suit against the indorser, Lord Chief Justice Abbott thought that this was a giving time which discharged the indorser, and the jury found a verdict accordingly. That case afterwards came before the whole court for revision; 6 Dowl. & Ry. C. Rep. 475: and was then decided upon a mere collateral point, viz. that the defence having arisen after suit brought against the indorser, should have been taken advantage of by special plea, and could not be given in evidence under the general issue; so that the ruling of the lord chief justice was not brought directly into judgment. It was not, however, in any measure overruled.

Upon the whole, we are of opinion, upon the ground of the agreement stated in the special verdict being a virtual discharge of the indorser, that the judgment of the circuit court ought to be affirmed, with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Ohio, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed, with costs.