## JESSE PAGE *vs.* DAVID WEBSTER.

Where a note is made payable at either of the banks in a city or town, it is not the duty of the holder to give notice to the maker at which of the banks the note will be presented for payment, when it falls due.

Mere delay to enforce the collection of a note against the maker, does not discharge an indorser, once made liable, where the holder does not so bind himself to give time to the maker, that an action against him on the note cannot be maintained.

Nor is such liability discharged by the neglect of the holder to commence a suit against the maker, when so requested by the indorser.

Nor is the indorser discharged by the neglect of the holder to enter an action against the maker, thereby releasing property attached on the writ, which was afterwards conveyed.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J. presiding.

The action was against the defendant, as indorser of a note, for $1,000, dated *Nov.* 11, 1835, made by *Phinehas Eastman* and *Lane & Usher*, to the defendant or his order, payable in one year from date with interest, at either of the banks in *Portland*, and indorsed to the plaintiff. The plaintiff read in evidence the protest of a notary public in *Portland*, it having been agreed to be admitted in evidence in place of his testimony, from which it appeared, that *Nov.* 14, 1837, he took the note from the *Canal* Bank in *Portland*, then claiming to be the holders, and presented it at that Bank in business hours, and demanded payment, the time of pay-

ment and grace expiring on that day, "notice having been issued, that it was payable at said Bank," and that payment was refused because no funds were there for that purpose; that· on the same day he presented the note to the defendant, the indorser, and informed him, that it had not been paid, and demanded payment of him, to which he replied, "the makers must take care of it." He also sent notices to the makers by mail. The defendant then proved, that after the maturity of the note, and before any suit thereon, the defendant requested the plaintiff to commence a suit against the principals, and told him, if the note could not be collected of them, he, the defendant, would give him a bond to pay it; that suits had been commenced against the defendant and the principals, for *February Term*, 1837, and their real estate attached; that in consequence of an agreement between the plaintiff and *Lane*, one of the makers, the suit against them was withdrawn, and not entered at the return term thereof; that *Lane* then paid one hundred dollars on the note, and took the plaintiff's receipt therefor; and agreed to see the note paid before the next *May Term*, and that the suit then pending against the defendant should be prosecuted to judgment; that at the time the suit against the makers was stopped, *Lane &* *Usher* had a large visible property, which could be attached, and that in *June* following, they conveyed all their real estate to their sons, and had no visible property to be attached, the consideration in the deeds being twenty-four thousand dollars, the sons being young men within the age of twenty-four years, and without property before the conveyance to them. The plaintiff proved, that the note had been some months in a bank for collection before it fell due. Upon this evidence the defendant's counsel requested the Judge to charge the jury, that the action could not be maintained, unless it was proved that the plaintiff gave notice to the signers of the note where it was to be found, and in what bank at its maturity, and that the notice should be given previous to its maturity; also, that the facts proved exonerated the defendant from his liability as indorser of the note; that by the agreement between the plaintiff and *Lane*, and by the payment made by *Lane*, and by the withdrawal and discontinuance of the suit against the makers, and by the neglect of the plaintiff to commence suits, as requested·by the defendant, he was released from his liability as in-

dorser. The Judge declined to give the instructions, and the jury found a verdict for the plaintiff. The defendant excepted to the refusal to give the instructions.

*S. Bradley,* for the defendant.

1. The first request for instruction should have been complied with. Due notice should have been given to the promissors at which bank in *Portland* the note was left, before it came to maturity. *Berkshire Bank* v. *Jones,* 6 *Mass. R.* 524; *Woodbridge* v. *Brigham,* 12 *ib.* 405; *Same case,* 13 *Mass. R.* 556; *North Bank* v. *Abbott,* 13 *Pick.* 465.

2. The second request should have been granted. Either the neglect to enter the action and prosecute the suit, thereby relinquishing the attachment; or the refusal to sue and collect of the principal on request; or the delay on receiving a partial payment; discharged the defendant from all liability as indorser. *Kennebec Bank* v. *Tuckerman,* 5 *Greenl.* 130; *Hunt* v. *Bridgham,* 2 *Pick.* 585; *Baker* v. *Briggs,* 8 *Pick.* 122; *Pain* v. *Packard,* 13 *Johns. R.* 174; *King* v. *Baldwin,* 17 *Johns. R.* 384; *Strafford Bank* v. *Crosby,* 8 *Greenl.* 194; *Bank of U. States* v. *Hatch,* 6 *Peters,* 250; *Chitty on Bills,* 290, 292; 3 *Bos. & P.* 365.

*J. Shepley,* for the plaintiff.

It was not necessary for the plaintiff to give notice to the makers of the note at which bank in *Portland* it would be presented for payment. If this were required, instead of its being a benefit to the holder, it would be an injury. It would be more troublesome to prove the notice, than the presentment for payment. If a note or bill be payable at two or more places, the holder has the option at which place to present it, and the party first liable must have funds at each place. *Bayley on Bills,* 232, and note 52, same page, by *Phillips & Sewall,* citing *Beeching* v. *Gower,* Holt, 313. But the principle contended for, if correct, did not excuse the defendant from showing that the money was ready at some one of the places. *Baldwin* v. *Farnsworth,* 1 *Fairf.* 416; *Bacon* v. *Dyer,* 3 *Fairf.* 19. The defendant's counsel relies alone on *North Bank* v. *Abbott* in support of his position. The remark is professedly a mere dictum of the learned Judge, who delivered the opinion; the decision was not founded on this principle; and it is believed,

furnishes another example of the impropriety and impolicy of throwing out superfluous learning by any Judge, however learned. If the Judge were called on at a trial to determine, whether *Portland* were a large or a small city, or how many banks would bring the place within his rule, would he decide himself, or leave it to the jury? The reasoning of the Judge in the same case, is perfectly conclusive against the dictum. But to have had the dictum applicable, the defendant should have shown, that *Portland* was a large city, which was not done.

The second request for instructions was properly withheld. The several particulars embraced in it are of the same class, and depend on the same principle, or rather want of principle. The original and correct doctrine is, that so far as it respects the holder of the note, there is no difference between principal and sureties. No transaction with one then, which would not discharge the other parties, were they all principals, would discharge a surety. This principle was departed from in *Pain* v. *Packard*, cited for the defendant, and has found some countenance in other cases, one of which has been cited from our own reports. It was much narrowed in *Fulton* v. *Matthews*, 15 *Johns. R.* 433, carried by but the single vote of a Senator in *King* v. *Baldwin*, and repudiated, in the State where it had its origin, in *Warner* v. *Beardsley*, 8 *Wend.* 194. All that now remains of it is, that the surety is discharged, if the holder for a sufficient consideration, so bind himself to give time to the principal, that he cannot bring a suit to enforce the payment of the note. The doctrine was, that the surety was merely liable in the last resort, after all means of getting the debt from the principal had been tried with all possible despatch, and exhausted, however expensive the process. Its brief existence has lasted long enough. *Freeman's Bank* v. *Rollins*, 13 *Maine R.* 202; *Frye* v. *Barker*, 4 *Pick.* 382; *Oxford Bank* v. *Lewis*, 8 *Pick.* 458; *M'Lemore* v. *Powell*, 12 *Wheat.* 554; *Lenox* v. *Prout*, 3 *Wheat.* 520. The facts in this case would not have discharged the defendant, had he been a surety; much less when an indorser and once charged.

Page *v.* Webster.

The case was continued for advisement, and the opinion of the Court was subsequently drawn up by

SHEPLEY J. — The note was made payable " at either of the banks in *Portland ;*" and the question arises under the first request, whether it was the duty of the plaintiff, before the note became due, to give notice to the makers, in what bank it might be found when due. The intention of the parties to the contract, if it can be ascertained, is to be carried into effect. Obligations are not to be imposed upon the holder, nor liabilities upon the indorser, which were never designed. This form of a note has been introduced into this part of the country within a few years ; and it may aid in determining the rights and duties of the parties to inquire at whose instance the note must have been so formed. It is not easy to perceive what benefit the maker would derive from a note in that form, unless it were made by a banker or banking house, in which case there might be hope of advantage from an increased circulation. While the maker ordinarily could derive no advantage from such a form, he might justly apprehend some inconvenience in looking up the note to pay it. For as it regards him it is quite clear, that the holder by the law in this, and most of the other States, is not obliged to have it at the place where payable. A readiness to pay at the appointed place is matter in defence only. *Bacon v. Dyer,* 3 *Fairf.* 19, and cases cited in *Bayley on Bills,* 203, *note* 15. It is not therefore probable, that it was so formed for his interest or accommodation. To the payee it might be of advantage. He might be desirous of making use of the note in the market, or at a banking house to obtain the money before it became due. It would be convenient to have it payable at a bank to save the risk and trouble of a presentment to the maker. And if made payable at a particular bank it would not be so readily received at other banks, because it would subject them to the risk and trouble of being watchful for the day of payment, and of sending it to the bank where payable for presentment. It would be natural for business men to endeavor to obviate this difficulty so as to enable them the most readily to obtain cash for the note at any bank, not being limited to one, where funds were to be loaned. A note payable at any bank in a place would therefore be desirable to the payee, and it is but reasonable to conclude, that such a form was introduced for his

convenience and interest. And if so, does it not shew, that the intention of the parties was to relieve the payee or holder from risks and troubles to which he might be subjected, if made payable at any one bank only ? And if such were the intentions of the parties, they can only be carried into effect by requiring the maker to look for his note at all the places where he promises to pay it. For to require the holder to give the previous notice now insisted upon would not only defeat the object of relieving from trouble and risk, but would subject to much greater, than if made payable at one bank only. The maker's express promise to pay at any one of several places would indicate to a common mind the duty to act according to what is supposed to have been the intention of the parties, and to look at all the places for it, or have funds there when it became due. And as respects his own liabilities, it has already been seen, that he must do it to relieve himself from the danger of costs, or at least must shew in defence a readiness at some place named. The payee never could have designed by receiving a note in that form to have incurred the responsibilities now supposed to attach to it, yet if there is any rule of law so clearly settled and well established as to decide the legal construction, which ought to be given to a contract in that form, the parties must be supposed to intend to conform to it.

*Pothier* discusses the duties of debtor and creditor when payment is to be made at a certain place, as a town or city, and the creditor has no domicil there ; and decides, that the creditor must notify the debtor, where he will receive payment before he can put him in fault. And if he does not, and the debtor wishes to pay, he should assign or require him to do it, and upon his refusal the debtor will be allowed to appoint the place. He then says, " it remains to be observed, that if the agreement contains two different places for payment, and they are connected by a conjunctive particle, the payment ought to be made by a moiety in each place." " If by a disjunctive the payment ought to be made altogether, in either, at the election of the debtor ; *generaliter definit Scaevola petitorem habere electionem ubi petat, reum ubi solvat scilicit ante petitionem.*" *Pothier, part* 2, *ch.* 3, *art.* 4. § 241. Where payment is to be made at either of several places, according to the *Roman* lawyer *Scaevola,* as quoted with approbation by *Pothier,*

the debtor may before demand, pay at either of the places; if he does not, and demand is to be made, the creditor may make it at either place. No intimation is made of a duty on the part of the creditor to notify before it becomes due, where the debtor may pay; and the duty required of the debtor before that time to elect his place of payment would not be consistent with such a requisition. And *Gibbs C. J.* seems so to have understood the creditor's rights, where he says, " I am of opinion as the note was payable at two places, that the plaintiffs had an option to present it at either." *Beeching* v. *Gower*, 1 *Holt*, 317. And that was a case to charge an indorser. This is adopted by Mr. Justice *Bayley* in his treatise on *Bills*, 232.

The case of the *North Bank* v. *Abbott*, 13 *Pick.* 465, is relied upon as requiring the creditor to give such a notice. Having the highest respect for that court, if a decision to that effect had been made, it would necessarily have had much weight. The Chief Justice, speaking of such a note, says, " it would seem to follow from other established rules, that in such case the holder should give notice to the promisor, where the note is. But it is not necessary to give any opinion in the present case." This cannot be regarded as settling the law in that State. And even if it were so settled, when a note is payable in cities so large, that there might be difficulty in ascertaining the number and place of business of the banks within the business hours of the day, there is no necessity for adopting such a rule in this State where all the banks in any one place can be visited in ten or fifteen minutes.

The next request relates to the neglect to enter and prosecute the suit commenced against the principals, or makers of the note. The plaintiff does not appear to have made any such contract for delay as precluded him from immediately commencing another suit; but it is said, that the effect must necessarily have been to delay. Mere delay after the indorser is once charged does not discharge him. It is only by such a contract for delay as binds the holder and disables him from proceeding, that the indorser is discharged. In the case of the *Bank of the United States* v. *Hatch*, 6 *Peters*, 250, which is relied upon by the counsel, this doctrine is clearly stated; and the decision in that case was not based upon the mere fact of the continuance, but upon the agreement made, by which

he disabled himself from commencing again until the next term. The true inquiry is stated to be "whether the parties did or did not intend a surceasing of all legal proceedings during that period;" and the conclusion was, that the agreement suspended the right to recover the debt until the next term. And it appears from the reasoning, that if the right to commence anew had remained, the plaintiff might have recovered.

In the case of *Lenox* v. *Prout*, 3 *Wheat.* 520, it was decided that an indorser was not discharged by a countermanding by the holder of an execution, on which the debt might have been collected of the maker, when the indorser offered to point out property to the officer and to indemnify him for selling it.

And in the case of *Fulton* v. *Matthews*, 15 *Johns. R.* 433, it was decided, that a discontinuance of a suit against the principal, without consent of the surety did not discharge him.

Another part of the request relates to the neglect of the plaintiff to commence suits against the makers as requested by the defendant. This doctrine may be said to have had its origin in the case of *Pain* v. *Packard*, 13 *Johns. R.* 174, where it appears to have been admitted, because it was supposed to have been the doctrine of chancery, as it would seem from the remarks of *Spencer* C. J. when giving his opinion in the case of *King* v. *Baldwin*, 17 *Johns. R.* 384, where he continues to adhere to it upon that ground. He says, "the doctrine is, that it is inequitable and unjust for the creditor, by delaying to sue, to expose the surety to the hazards arising from a prolongation of the credit, and that the surety has an equity sufficient to invoke the interposition of the powers of a Court of Chancery for his protection." Here the ground of interposition is said to be in chancery, the exposing of the surety to the hazard arising from a prolongation of the credit. And yet there is no point more perfectly settled, than that mere delay is not a cause of complaint. It is believed, that upon an examination of all the cases, it will be found, that chancery had never admitted any such principle, as was supposed. It is not upon a request simply without an offer of indemnity against the risk, delay and expense, that the holder is required to proceed against the principal to the exclusion of the surety. *Wright* v. *Simpson*, 6 *Ves.* 734; *Hayes* v. *Ward*, 4 *Johns. Ch. R.* 123. The rule in equity commends itself

to the judgment as reasonable and just. But to hold, that the payee or indorsee must proceed on request against the principal at whatever risk of loss by a change in the responsibility of the surety or indorser, and at expense, delay, and risk in endeavoring to obtain payment from him or from his property, the title to which may prove to be doubtful, is allowing the surety to throw upon the holder much of the risk and trouble, which by the contract he assumes and engages to free the holder from. Hence it was, that in chancery the doctrine of *Pain* v. *Packard* was repudiated, as setting up a rule unknown to it. And the Chancellor says, " there is no case, however, in the *English* law in which the personal application of the surety to the creditor was held to be compulsory on the creditor, at the hazard of discharging the surety." *King* v. *Baldwin,* 2 *Johns. Ch. R.* 554. It is true, that the Chancellor's decision was reversed in the Court of Errors by a casting vote ; but instead of adding strength to the former decision, it exhibited a part of the same Judges as satisfied, that it was erroneous. And whatever of authority existed in those cases may be regarded as destroyed by the case of *Warner* v. *Beardsley,* 8 *Wend.* 194, where the cases in accordance with and opposed to it are referred to, and the doctrine of chancery is again stated, requiring in such case an indemnity from the surety. In *Massachusetts* the doctrine of *Pain* v. *Packard,* seemed to find some countenance in the case of *Hunt* v. *Bridgham,* as well as in this State, in *Kennebec Bank* v. *Tuckerman,* 5 *Greenl.* 130. It was doubted in *Crane* v. *Newhall,* 2 *Pick.* 612, and in *Frye* v. *Barker,* it is said never to have been adopted there. And in the case of the *Freeman's Bank* v. *Rollins,* 13 *Maine R.* 202, it is left in this State, as an undecided question. Upon examining the origin of the doctrine, and the opinions of eminent Judges in various cases, since decided, the impression is left, that the doctrine arose out of a misconception of the true rule in chancery ; that the reasons upon which it rests are unsound ; and that it places the rights of the parties to the contract upon a basis never contemplated or designed by them, and that it ought not to be received as a rule of law in this State.

Another point made in the defence was, that property attached was released, and that the principals have since conveyed.

Where the creditor has available property of the principal in his hands, from which without loss, expense, or injury to himself, he can obtain the debt, it is his duty to do so. And when he has collateral security, he should not surrender it to the principal without the consent of the surety who has an equitable right of substitution, that upon payment he may have the like advantage of such collateral or additional security. And it may be, that by giving a bond of indemnity without going into chancery, he may require the creditor to sell any property attached, and make the money out of it. But a creditor cannot be expected at his own expense and risk to prosecute a suit to judgment, and upon the execution take either personal or real estate, the title to which may be doubtful, for the sake of relieving a surety, who instead of doing his own duty by paying the debt, stands by and assumes no risk to save himself from the consequences, which are the result of his contract.

This is the doctrine of the cases of best authority, and it is not at variance with that of the case of *Baker* v. *Briggs.* In that case, the instruction was predicated upon the position, that the plaintiff had personal property of the principal in his hands, as security for the debt, and delivered it back without the consent of the surety. But the debtor has no just cause of complaint, when the property is not in his own hands, that the creditor prefers looking to his surety in preference to taking upon himself the risk of endeavoring to obtain payment from property, over which he has no more control, than the debtor might have by paying the debt and commencing a suit in his own behalf.

*Exceptions overruled.*