Opinion of the Court, delivered by
Hornblower, C. J.
The questions reserved, and which have been argued at the bar are these, viz: First, Was parol evidence, admissible to prove, that the note in question in this case, was one of the several promissory notes referred to in a certain writing, of which the following is a copy, viz: “ New York, 9th Sept. 1837; Received from Geo. W. Tyson & Co. a note at twelve months, dated 15th Feb’y. 1837, signed by S.- C. Barton, Joseph C. English and others, for $4484 71, as collateral security for certain notes we hold of theirs, and on which, we agree to extend the time, until the 15th of March next.” (Signed) Robbins and Martin. And
Secondly, If such evidence was admissible, did Robbins and Martin, by any thing contained in that writing, discharge Bell, the indorser, from his liability on the note in question ?
First, Was the evidence admissible? I had not any serious doubt at the Circuit on either of the points; but as the sum in controversy, was large, and the counsel for the plaintiff were anxious to have both matters reserved for consideration at bar, I was willing to do so. The argument and reflection consequent *168 thereupon, have been such as to remove all doubt upon the point, if I had entertained any.
The counsel for the plaintiff, admitted, that parol evidence was admissible to show what notes of Geo. W. Tyson & Co., were then held, by Robins and Martin, but denied that it was competent, by such evidence, to show that this particular note, was one on which time was to be given, and for which the note of Barton and others, was to be held as collateral. His idea seemed to be, that Robins and Martin might have held a number of notes given by Geo. W. Tyson & Co. and that the note of Barton and others, was taken, as collateral, not for all, but only for certain ; that is, for a particular portion, or description of those notes. I do not see, that this suggestion helps the plaintiff. By the admission, that it was competent to show by parol, what notes Robins and Martin then held against Geo. W. Tyson & Co. it seems to' me, he has admitted away his objection. The words of the agreement, would, in sound legal and grammatical construction apply to all such notes, then held by Robins and Martin; and it would be a more serious question, whether the plaintiff could, by parol, be permitted to show, that this particular note, was to be excepted, out of the number of those, for which the note of Barton and others, was to be collateral, and on which, time was to be given.
This is unquestionably, a latent ambiguity. It is not a question of construction. The language of the agreement, is plain and unequivocal, and clearly expresses the meaning of the parties ; that the note of Barton and others should be held as collateral security for certain notes of Geo. W. Tyson & Co. then in the hands of Robins and Martin. This is the plain reading of the instrument: the word “ certain,” creates no uncertainty ; but on the contrary shows what notes of Geo. W. Tyson & Co. were intended, namely: those then in the hands of Robins and Martin. How many such notes, for what sums, when given, and by whom indorsed; were questions of fact, left by the parties, to be ascertained by extrinsic evidence, whenever it should become necessary to apply the terms of the contract, to the notes to which it related. The admissibility of parol evidence, for the purpose of' applying the general terms of á written agreement, to the particular subject matter, or specific object to which it relates, or for the purpose of proving the number, nature and par *169 licular character of the things referred to; or of designating which of two or more objects, was intended by the parties, when the writing describes it by a name, that is common to several persons or things, has been so often decided, that it is unnecessary to cite authorities. They will be found collected, almost without number in 3 Stark. Evid. 995, and Seq. 13 Petersd. Abr. tit. parol evid. 76, (109 in Marg.) and Seq. Norris’ Peake on evid. 178-186. 2 Sawnd. pl. and evid. 244, (698 in Marg.) Phil. evid. 443, 444.
It is sometimes difficult to say, when an ambiguity, is apparent, on the face of the instrument; and when it results from extraneous matters, to which the instrument relates ; but which are not defined, or specified in it. The cases on this subject, cannot be reconciled. In Piesh v. Dickson, 1 Mas. C. C. R. 11. Justice Story says, “ there seems to be, an intermediate class of cases, partaking of the nature, both of patent and latent ambiguities; as whore the words are all sensible, and have a settled meaning, but at the same time consistently admit of two interpretations, according to the subject matter, in the contemplation of the parlies,” and in such cases, the judge says, he should think parol evider.ee admissible to show the circumstances, under which the contract was made, and the subject matter to which the parties referred. In Ely v. Adams, 19 Johns. R. 313, Spencer, Ch. Justice, says, where a question arises on the general intention of the parties, concerning which, the instrument is not decisive, proof of independent facts, collateral to the instrument, may be properly admitted ; and accordingly in that case, evidence was received, of a conversation between the parties, at the time of making the writing, and of other collateral and extraneous facts, in order to show, what kind, or degree of “indulgence” (that being a word of equivocal import) was intended by the parties. And see Peake’s Evid. 116; Phil. Evid. 343, 344. The King v. The Inhabitants &c. 8 T. R. 379; Doe v. Burt, 1 T. R. 701; Cole v. Wendall. 8 Johns. R. 118; The Mechanics Bank v. The Bank of Columbia, 5 Wheat. 326; and The Union Bank v. Hyde, 6 Wheat. 572, all of which, seem to show, that the admissibility of parol evidence, is not restricted to cases, in which the uncertainty is strictly and exclusively such as is properly termed, ambiguitas latens. But it is unnecessary for the settlement of this case, to *170 pursue this subject any further. The evidence was properly admitted at the Circuit.
II. Did Robins and Martin, (they being the holders of this note,) on the 9th September, 1837, discharge the indorser, by the agreement then made ?
The note in question was made on the 6th March, 1837 : payable four months after date. It was then, lying in the hands of the plaintiff and his partner, over due, on the 9th of Sept. 1837, when they made the agreement under consideration. By that contract, they stipulated with Geo. W. Tyson & Co. the makers of the note, in consideration of receiving from them collateral security for the ultimate payment of that, and other notes, then in their hands, to wait on them for payment, until the 15th of March, then next, being an extension of credit, for the period of six months and a few days.
The cases upon this subject, are very numerous, and many of them, were cited on the argument, and although some refinements and nice distinctions, have been introduced in the discussions; yet the general principle to be extracted from them, is that if the holder of a note, without the concurrence of all the other parties to it, enters into a binding agreement with the maker of the note, to give him a further day of payment, so as to suspend his remedy against him, and preclude himself from suing the maker, until the period of such extended credit, has expired, he thereby discharges the indorsers.
It must be a binding agreement: and must therefore be made upon a good or valuable consideration : and it may be added, that it must be to the prejudice of the indorser. McLemore v. Powell et al. 12 Wheat. 554. But this does not mean to his actual, ascertained loss or injury: but to his prejudice, in contemplation of law; by depriving him of his right to take up the note, and sue the prior indorsers, or the maker, until after the expiration of the extended credit, given by the holder. If it were otherwise, then, however long, and under whatever circumstances, tbe holder might postpone the day of payment, the indorser, against his consent, would be held liable; and could only discharge himself by showing that the money might have been recovered of the maker, if further day of payment had not been given him. Such a doctrine would lead to interminable difficulties, and subvert the *171 very foundations, upon which the whole system of commercial paper has been erected. Wood v. The President &c., 9 Cowen R. 194, 206; English v. Darby, 2 Bos. and Pul. 61, 62; Hubly v. Brown, 16 Johns. R. 70, 72; King v. Baldwin et al. 2 Johns. C. 11. 554, 559, 560, &c. According to the older cases upon this subject, (as may be seen by reference to Chirty on Bills, Spring/, ed. 1839, Chap. ix. p. 441, note g. and 446, in the text,) any absolute and distinct agreement to give the acceptor time, was considered as discharging the drawer and indorsers; without regard to the question, whether the agreement was founded on a sufficient consideration to make it legally binding on the immediate parties thereto. But a contrary doctrine has long since prevailed, and it is now held, that the agreement must be one founded on a sufficient consideration to make it binding in law ; and must operate to the prejudice of the indorsers, in the sense at least, above stated, in order to have the effect of discharging them from their liability as such.
In the ease of The President &c. of the Bank of the U. States v. Hatch, 6 Peters, 250, the Supreme Court of the U. States, have carried this doctrine as far perhaps as it has been, in any case to be found in the books. The Bank had instituted a suit, against Pearson the drawer of the bill; the suit stood for trial at the approaching term. The agent for the plaintiffs agreed with Pearson, that the suit should be continued without judgment, until the next term, if Pearson would permit a person, then in confinement at his suit, to attend a distant court as a witness for the Bank. The court held, that this was an.agreement for a valuable consideration : to suspend the right to enforce payment until the next term: and therefore a virtual discharge of the indorser.
In the case now under consideration, the terms of the contract are so explicit, we are left in no doubt, as to the sufficiency of the consideration, or the extension of credit given to the makers of the note. It secured to them an exemption from suit upon the note until the 15th of March, 1838; and therefore discharged the indorser from further liability.
The verdict must be set aside and judgment be entered for the defendant, with costs.
Cited in Paulin v. Kaighn, 3 Dutch. 518.