# STRAFFORD,

## DECEMBER TERM, A. D. 1844.

---

### PRESCOTT *v.* PERKINS.

The defendant having receipted to the sheriff for certain goods attached in an action against the plaintiff and others (to some one of whom the goods belonged), after judgment in the original action, was sued on the receipt by the sheriff, and execution issued against him. Afterward he with the plaintiff and another of the defendants in the original suit, became sureties upon a note, by which money was raised to satisfy the judgment in the original action, and thereupon both executions were discharged; *held*, that prior to the giving of the second note, the plaintiff, even if he had paid the debt, would have had no claim upon the defendant to contribute.

Neither would the defendant if he had paid the execution against himself, have had any claim upon the plaintiff to contribute, except upon showing that the attached goods belonged to the plaintiff, or that he receipted for them at the plaintiff's request.

The fact that the plaintiff subsequently to having receipted purchased the goods attached, would not change the relation of the plaintiff to the defendant.

In the note on which the original action was founded, one O was the principal, and the plaintiff and one H were the sureties. In the second note, on which the money to pay the original judgment was obtained, O was described as the principal, and H together with the plaintiff and the defendant, were described as sureties; *held*, that no contradictory explanation of these facts appearing in evidence, it must be taken to be the case that the defendant became a co-surety on the note with the plaintiff and H, and was liable to contribute toward a payment made by the plaintiff.

ASSUMPSIT for money paid, laid out, and expended, &c. The plaintiff's specification set out a note dated September 23, 1839, signed by I. B. H. Odiorne as principal, and

by Joseph Hanson and the plaintiff and defendants as sureties, made payable to the Strafford Bank in sixty days, for $850, and interest; and that the plaintiff had paid on said note the sums indorsed thereon, the note being fully paid.

The evidence tended to show that Odiorne as principal, and the plaintiff and Hanson as sureties, on the 4th of September 1837, gave a note to Bartlett and others of Boston, for $800, on interest; upon which the plaintiff paid March 19, 1838, $100. On the 16th of April, 1841, Bartlett commenced a suit upon the note, and caused the goods in the store, then owned either by Odiorne or the plaintiff, to be attached, and the defendant receipted for them, valued at $1000. The plaintiff had previously been the clerk of Odiorne in the store, and about that time, either before or after the attachment, bought out the interest of Odiorne, and carried on the business himself, although Odiorne remained about the store attending to his own business.

The defendant was sued by the sheriff on his receipt, and judgment rendered against him at the August term 1839, and execution issued thereon.

The evidence further tended to show that the money obtained from the bank upon the note of September 23, 1839, mentioned in the plaintiff's specification, was procured for the purpose of paying the execution of Bartlett and others against Odiorne, Hanson, and the plaintiff, and was so applied, and the execution discharged September 24, 1839. The execution against the defendant was discharged the same day.

It was admitted that the plaintiff paid to the bank the several sums mentioned in his specification.

The court instructed the jury, that although as between the bank and the signers to the note payable there, Odiorne must be treated as principal, and the plaintiff, defendant, and Hanson, as sureties, yet, as between them-

Prescott *v.* Perkins.

selves, if the money obtained from the bank was obtained for the purpose of paying the debt of Odiorne, Hanson, and the plaintiff, to Bartlett, and was so applied, the defendant being no party to that debt, and being under no obligation to pay any part of it, the money might be considered as obtained from the bank for the benefit only of Odiorne, Hanson, and the plaintiff, and as it enured to their benefit, and not to the benefit of the defendant, he might treat them as all principals upon the note and himself as their surety; and consequently the defendant was not liable for contribution to the plaintiff, if he paid the whole of it; notwithstanding that the payment of the debt to Bartlett operated as an extinguishment of the sheriff's execution against him upon his receipt; that it made no difference whether the goods attached on Bartlett's writ belonged to Odiorne or to the plaintiff, since they were both liable to pay the whole debt, and as the goods were never taken out of the possession of the owner, whoever he was, *he* could not be the sufferer by the act of the defendant in receipting for them, and leaving them in his possession and at his disposal; that if the plaintiff had previously bought them of Odiorne, he could be no worse off by having them released from the custody of the sheriff and returned to his own possession so that he could dispose of them, and have the avails of them; that if Odiorne owned them at that time, and the plaintiff bought them of him afterward, the plaintiff, knowing his liability to pay that debt, and that it had been sued, should have retained enough in his hands to secure himself, as well as the defendant the receipter; and that as the defendant by receipting for the goods had only made himself responsible to the sheriff for their safe-keeping and return to him on demand, the plaintiff ought not to take advantage of his own act in purchasing them of Odiorne, and putting them out of the reach of the defendant to return them.

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

*Hale & Wiggin,* for the plaintiff. One co-surety may maintain an action against his co-sureties for contribution. *Johnson* v. *Johnson,* 11 Mass. 359; *Taylor* v. *Savage,* 12 Mass. 98.

The attachment of Odiorne's property by the payees of the original note, Odiorne being solvent and the debt collectable out of the property, operated as a release of the sureties. An attachment is a lien: *Kittredge* v. *Warren,* 14 N. H. 509; and a lien which could be lost by default or negligence of those plaintiffs. It should therefore protect the sureties from further liability. As the creditors elected to rely upon their attachment, thus depriving the sureties of the power to indemnify themselves from the goods, the sureties might well consider themselves released. *Jackson* v. *Bowen,* 7 Cowen 13; *Ex parte Lawrence,* 4 Cowen 417; 1 Salk. 322; 2 Lord Raymond 1072; 4 Mass. 403; 8 Cowen 192; 12 Johns. 208.

But for the act of the defendant the sureties were well enough. That act put the property out of their reach and made it subject to attachment by other creditors. *Dunklee* v. *Fales,* 5 N. H. 527; 8 Pick. 397, 419; 4 Pick. 398; 14 Mass. 195; 12 Mass. 133, 495. This act could in no way operate to re-charge the sureties or make them further liable. *Webster* v. *Harper,* 7 N. H. 597; 11 Mass. 215.

By receipting at Odiorne's request, the defendant placed himself in no better situation than if he had paid the note on a similar request, which would not have entitled him to contribution. 1 Selwyn's N. P. 69.

If the foregoing positions are right, the last note was for this defendant's benefit notwithstanding he signed as a surety. To maintain his position he must make it appear that Prescott and Hanson intended to stand in the relation of principals toward him. *Harris* v. *Warner,*

13 Wend. 400; *Warner* v. *Price*, 3 Wend. 397; *Beeman* v. *Blanchard*, 4 Wend. 432.

*Christie*, for the defendant. The general principles as to contribution laid down by the plaintiff's counsel do not apply to this case. If they are correct, the plaintiff should go for the whole amount which he has paid.

The ruling of the presiding judge that it was immaterial who was the owner of the goods, we think was right. If they were Odiorne's goods it was well that the defendant suffered them to remain in Odiorne's possession. At all events the plaintiff was on the ground and knew the whole, and with that knowledge soon after purchased, if indeed he had not done so before the attachment or receipting. In short the plaintiff was every way bound in good faith to see the proceeds applied to the original debt.

The making of an attachment does not discharge prior sureties. It is common to collect money of a surety after making an attachment on the principal's land.

When one surety becomes such at the request of another surety, and the latter subsequently pays, he can not maintain an action for contribution against the other. *Daniel* v. *Ballard*, 2 Dana 296; 6 Gill & J. 256; *Crelson* v. *Green*, 2 Caines' Cases 154.

In actions for money paid the court will look into the equity of the case. *Taylor* v. *Savage*, 12 Mass. 98. If one is virtually a principal, it is in such an action of little consequence that he signs as a surety.

PARKER, C. J. It does not appear whether the goods attached were at the time the property of Odiorne or the plaintiff. They had belonged to Odiorne, who was principal on the first note.

Nor does it appear at whose request the defendant receipted the goods; nor, by any express evidence, at whose request he signed the note.

The goods having been receipted for, went into the hands of Odiorne or the plaintiff. They were sold by Odiorne to the plaintiff before or after the attachment.

The plaintiff can not treat the attachment as a satisfaction of the debt, or as a release of himself. *Bank* v. *Hallet*, 8 Cowen 192. If there had been a levy of the goods of Odiorne upon an execution, as in the cases cited by the defendant's counsel, it might have some effect. A levy of an execution upon the property of the debtor, sufficient to satisfy the judgment, may operate to discharge it. But there is no pretence that an attachment upon mesne process has any such operation. The plaintiff, with Odiorne and Hanson, still remained liable. There was a judgment against him. He could not have defended the suit.

The creditors, Bartlett and others, were not bound to follow up the attachment. *Page* v. *Webster*, 15 Maine 249. They did however so far as to obtain a judgment against the defendant on his receipt. They might then have resorted to either execution for payment. But on the state of facts thus far, if the plaintiff had paid, he could not have resorted to the defendant for contribution. The defendant was not by means of the receipt a co-surety with him; and if the defendant had been obliged to pay, he could not have resorted to the plaintiff as a principal, except upon showing that the goods attached were his, or that the defendant became receipter at his request. Cases are not unfrequent where two persons, liable collaterally or as sureties, have no remedy against each other. *Harris* v. *Warner*, 13 Wend. 400; *Elmendorph* v. *Tappen*, 5 Johns. 176.

The sale of the goods by Odiorne to the plaintiff, if after the receipt, would not change the relations of the plaintiff and defendant so as to make the former a principal.

As the plaintiff was originally liable on the first note

as a surety, as that was the primary liability (for the attachment was only another security taken by the creditors), and as the money was raised from the bank to pay that debt, if the parties to the note to the bank had signed without any designation of their character as principal and surety, perhaps the defendant might well have concluded that he was in fact a surety for those who signed the first note, notwithstanding there was a judgment against him on the receipt; that judgment being a secondary collateral security. The case finds that the money was raised to pay the judgment against the signers of the first note, and if there had been no evidence at whose request the defendant signed, it might perhaps be inferred that he signed as surety for all those who were originally liable, notwithstanding some of them were sureties. It has been held that there must be something to show a contract establishing the relation of principal and surety. *Harris* v. *Warner*, 13 Wend. 400.

But any question on this subject seems to be set at rest by the note itself made to the bank, in which Odiorne is described as principal and all the others as co-sureties. This, under the circumstances, without explanation, seems to be conclusive evidence that the debt was, to the last, treated as the debt of Odiorne; and that the defendant became a co-surety with the plaintiff and Hanson at Odiorne's request. The cases *Lapham* v. *Barnes*, 2 Vt. 213; *Warner* v. *Price*, 3 Wend. 397, and *Beaman* v. *Blanchard*, 4 Wend. 432, are strong cases to show that the defendant can not claim to be surety for all the others. Regarding him as co-surety he is liable to contribute, and there must be a

*New trial.*