May Term,
1845.

THE STATE
BANK
v.
WYMOND.

Wednesday,
May 28.

THE STATE BANK v. WYMOND and Another.

*If the indorsee of a bill of exchange give time to the drawer, for a valuable consideration, he thereby discharges the indorser.*

APPEAL from the *Dearborn* Circuit Court.

DEWEY, J.—Assumpsit by the State Bank, as the indorsee, against *Wymond* and *Faris*, as the indorsers, of a bill of exchange. The bill, which is dated *December* 2d, 1841, was drawn by *Isaac Dunn* on *N. N. John*, at *New Orleans*, in favour of the defendants, for 4,500 dollars, at four months. Plea, the general issue. Cause submitted to the Court. Judgment for the defendants.

The plaintiff having made out a *prima facie* case, in which it appeared that the bill was drawn and indorsed for the benefit of the drawee, the defendants proved the following facts: On the 25th of *September*, 1842, the plaintiff entered into an agreement with *Dunn*, the drawer, by which it was stipulated that *Dunn* should give a *cognovit* for a judgment on the bill in favour of the plaintiff, at the then next term of the *Dearborn* Circuit Court; that he should deliver to the bank, and place under its control, certain mortgages, as collateral security; that there should be a stay of execution on the judgment confessed for eighteen months; and that a suit in favour of the bank against *Dunn* on the bill, then pending in the *Marion* Circuit Court, should be dismissed. In pursuance of the agreement, the mortgages were delivered to the bank, the *cognovit* given, the judgment confessed at the *October* term of the *Dearborn* Circuit Court, 1842, and a stay of execution for eighteen months entered of record. The mortgages were executed by *E. D. John* to *N. N. John*, and assigned by the latter to *Dunn*. The object of the mortgages was to secure the drawer and indorsers of the bill against loss. The defendants had no knowledge of the mortgages, nor of the arrangement between the plaintiff and *Dunn*.

The counsel for the bank contends that, inasmuch as the collateral security afforded by the mortgages was advantageous to the defendants, the giving time by the plaintiff to the drawer did not discharge them.

This is not, however, as we conceive, putting the cause on the true ground. The relief which, in some instances, is ex-

tended to sureties in Courts of law, in consequence of giving time to the principal, is a doctrine borrowed from a rule in equity. The rule is this, that the surety has the right, so soon as the debt for which he is bound becomes payable, to require the creditor to enforce his legal remedy, or to pay the money himself and resort immediately to the principal for reimbursement. Whatever impairs this right discharges the surety. A creditor, by suspending his rightful power to coerce the principal, undertakes that he will not, during the suspension, receive the money from the surety; for should he receive it from him, the surety would be entitled to take his recourse immediately against the principal, who would consequently lose the benefit of the further time given him by the creditor; this, if the principal has given a consideration for the delay, would be unjust to him. On the other hand, it would be equally wrong to compel the surety to submit to the delay, and run the hazard, in the mean time, of an unfavourable change in the circumstances of the principal.

This equitable doctrine has been applied by Courts of law to actions founded on bills of exchange. *English* v. *Darley*, 3 Esp. 49, and 2 B. & P. 61, was assumpsit by the indorsee against the indorser of a bill of exchange. The plaintiff had obtained judgment and sued out execution against the acceptor; he compromised the matter by receiving from the acceptor part of the debt, and taking a new security for the remainder payable by instalments, and by withdrawing the execution. It was held that the indorser was discharged, on the ground that the holder of the bill had given time to the acceptor. *Gould et al.* v. *Robson et al.* 8 East, 576, was also an action by the indorsees against the indorsers of a bill of exchange. At the maturity of the bill, the holders made an arrangement with the acceptor, by which they agreed to receive from him a portion of the money due, and for the residue to draw on him at a short future period. This was done, and the new bill accepted, the holders agreeing to retain the first bill until the other was payable, as a security. The second bill not having been paid at maturity, suit was brought upon the first. It was argued that the indorsers were benefited by that part of the transaction by which a part of the debt was paid, and could not, therefore, with propriety complain of the postponement of the time for the payment of the

remainder. But the Court decided otherwise, and held that
the giving of time for a part of the debt discharged the indor-
sers.

In the foregoing cases the acceptor was considered as the
principal, and the parties to the bill, subsequently liable, as
the sureties. But the equitable rule above stated is, in gene-
ral, equally applicable to all cases founded on bills of ex-
change, where the holder has given time to any of the parties
to the instrument who would be liable to any other party,
upon such other party's taking up the bill. The effect of
giving time is to discharge the party having the right of re-
course. Story on Bills, 501. The case of the *Bank of the
United States* v. *Hatch,* 6 Pet. 250, was an action by the in-
dorsee against the indorser of a bill of exchange. It appeared
that the bank had previously commenced an action against
the drawer, which stood for trial at a certain term of the C.
C. of the *United States* for the district of *Ohio;* and that the
bank agreed with the drawer, for a valuable consideration, to
continue the cause for judgment until the next succeeding
term, which was accordingly done. It was held that the in-
dorser was discharged. See, also, *Hall* v. *Cole,* 4 Ad. & Ell.
577.—6 Nev. & Mann. 124.—*English* v. *Darley, supra, per
Ld. Eldon.* The rule, probably, does not apply to a case in
which the holder of a bill having given time to a mere accom-
modation party, afterwards seeks to recover the debt from
the party for whose benefit the bill was drawn, indorsed, or ac-
cepted. Story on Bills, 501.—*Lambert* v. *Sandford,* 2 Blackf.
137. But this exception to the rule cannot avail the present
plaintiff. The bill of exchange in question was not drawn or
indorsed for the benefit of the defendants, but for the use and
accommodation of the acceptor; and the defendants have
been affected by the time given to the drawer, precisely as
they would have been had the bill been drawn and transferred
in the regular course of a business transaction.

It should be remarked that when the time of payment is
*agreed* by the holder of a bill to be postponed, the agreement,
to operate as a discharge of a party otherwise liable, must be
made without the consent of that party, and be founded upon
a good and valuable consideration. A mere voluntary delay
in suing any of the parties to a bill does not exonerate any
other party. *Philpot* v. *Briant,* 4 Bing. 717.—*Clarke* v.

*Devlin*, 3 B. & P. 363. Nor does the taking collateral security have that effect. *Pring* v. *Clarkson*, 1 B. & C. 14.—*Bedford* v. *Deakin*, 2 Stark. 178.

In the cause under consideration, the agreement of the plaintiff to give a stay of execution of eighteen months on the judgment confessed by the drawer of the bill, was not only founded on a valid consideration—the delivery of the mortgages as collateral security,—but it was actually carried into effect by an entry of record; and it was made without the knowledge or consent of the defendants. Thus, the plaintiff was effectually prevented from collecting the debt from the drawer until the lapse of a year and a half. It can make no difference as to the rights of the parties, whether the time given was in the form of a stay of execution, or by an agreement not to sue. The result was the same; the defendants were deprived of their right to have the plaintiff collect the money from the drawer without delay, or of paying it themselves and taking their remedy immediately against him. This is the injury of which they complain; and it is no answer to their complaint to tell them that the collateral security taken by the plaintiff was designed for, and might enure to, their benefit; the plaintiff had no right to deprive them of a privilege given them by the law, and to substitute for it something else, which, in the opinion of the plaintiff, might be equally advantageous. Of that matter the defendants had a right to judge for themselves; and having been deprived of that right by the unauthorized act of the plaintiff, they stand discharged from all liability to the bank on the bill of exchange on which this suit is founded.

We think the decision of the Circuit Court is clearly right.

*Per Curiam.*—The judgment is affirmed with costs.

*A. Lane*, for the appellant.

*J. Ryman* and *P. L. Spooner*, for the appellees.