Peck, J.
delivered the opinion of himself and Judge White. This cause came into the circuit court by petition and certiorari. The principal grounds in the petition are, that no notice was given the security of the intended motion; therefore, the petitioner could not appeal: That after the money had been collected, day was given-by the plaintiff in the execution, to the constable, for payment: That by such indulgence, after the money was made, the same was lost; and that the justice had no jurisdiction; There was no motion to quash, but amotion to dismiss, which was overruled.
The circuit court gave judgment for the plaintiff in the motion. The proof shows, that Wells agreed with the constable that he might keep the money six or eight weeks; within that time he was solvent, but became insolvent before the motion was made. The co-security is also insolvent. By the record it appears that twelve months elapsed from the time the money had been col-lected until the time of making, the motion.
The act of giving indulgence to the officer, is, under the circumstances of this case, fatal to the demand against the security. The law is, if the constable fail or refuse to pay on application, judgment shall be given. Appli *493 cation is indispensable. Here, if application had been made lor the money, an agreement followed upon it, which has proved prejudicial to the security. The effect of letting the money remain in the hands of the constable, whether it be considered as a loan or accommodation, placed the plaintiff in execution and the constable in a new relation, to which the security was neither privy or party. The.plaintiff should not have been liberal at the expense of the security; and the loss, if any happens, should rest upon him giving the indulgence. If the plaintiff intended to make the security liable, he ought to have been reasonably prompt in both-demand and coercion. So far from this, indulgence by agreement is given for weeks, and as some of the witnesses say for months. The money had been collected the 8th of April, 1828, and notice of the intended motion given 7th April, 1829, one year afterwards, the co-security and constable both then insolvent; the surety uninformed either of the fact of indulgence, or of the motion against him.
In New York it has been held, that an agreement by which the holder of a promissory note gives time to the maker, discharges the endorser, if such indulgence be to, his prejudice. 9 Cow. 194. To the same effect is the case of Cane vs. Caldwell, (3 John. R. 384;) and if the holder receive part and indulge for the balance, to retain the liability of the endorser he must have notice. 1 John. Cases, 131: 3 M’Cord, 13.
Credit-or indulgence given to the maker, acceptor, endorser or promissor, is a consent to hold the demand on those indulged, and no other. 7 Mas. Rep. 494.
It is true, that, as a general rule, some consideration should be given as the grounds of delay, because that would bind the parties to the contract for indulgence. But there are other rules evidently deducible from the cases, and they may be summed up in these: If the act of indulgence be done to the injury of the surety; or, if the-terms of the obligation be varied; or, if the time for per *494 formance be enlarged, without the consent of the security, he will be discharged. 10 John. R. 587.
If under these and the like circumstances, a surety, or one standing in that character, would be discharged, for stronger reasons the- present case as made out in the proof, discharges the plaintiff in error. The law-merchant supposes that those standing in the relation of maker and endorser have the means of securing each other; and it is on this principle that vigilance in giving notice shall secure liability.
Butin the case before us, thé means of a surety for an .officer securing himself, is not, as in the other case, in-ferable. The argument in favor of the surety for an officer, may be carried much further. Such an one has a right to suppose that in all cases the duty will be well performed. The writ directs when and where the money shall be paid, and the officer acts on oath. What power has the security to coerce faithful execution and accountability? As no one can coerce in a case like the present but the plaintiff in execution, if he can agree with the officer and indulge at pleasure with the use of the money, because the security is bound, then of all men the security would be the most helpless. Secret combinations or caprice might ruin him. While the law regards the rights of the plaintiff in the execution, it will not overlook that of the security; and in all cases where the question is presented to the court in this summary mode of proceeding, matters equitable as well as legal, to attain what is justice, must be regarded.
Therefore, the circumstances which have followed this indulgence, one year having expired, both the officer and co-security having in the meantime become insolvent, presents a plea which to my mind is irresistible for the plaintiff in error. So far as he is affected by the judgment, it must be reversed.
Green, J.
The opinion of my brothers, Whyte and *495 Peck, I think goes too far. I am not willing to say that a mere consent to wait with the principal a lew weeks or months, without any consideration, without taking any new security, an agreement having no binding effect upon the parties, shall in ordinary cases, be sufficient to release the security. I concur in the positions laid down by the supreme court of the United States, in the case of McLemore vs. Powell, (12 Wheat. 554,) and consider them the sound and safe rules upon this subject. The security may, by our act of 1801, ch. 18, give the notice therein specified, and put the risk of delaying to bring suit upon the holder of the note. An endorser of a note or bill of exchange, having been fixed with notice, may make payment of the note or bill, and sue the maker or drawer himself. A mere argreement, not obligatory on the parties, cannot prevent his remedy, nor injure him. But if a binding contract be made with the principal for delay, the security would be injured, for he could not sue. By the payment, he would only be placed in the situation of the holder, and the principal debtor could insist upon his contract. In such case the security would be discharged. Chitty on Bills, 292: 12 Wheat. 554: 9 Cowan, 194: 10 John. 58. The case before the court, however, presents a different aspect from that of joint obligors of a note, or endorsers of a bill of exchange. Here the defendant was security for a constable. The act of 1801, ch. 18, does not apply to such a case. The security knows that the law requires the officer for whom he is bound to return process within a given time, and pay over moneys by him collected. It is a reasonable expectation that a plaintiff whose execution is in the hands of the officer, will enforce a strict accountability. The security cannot be supposed to make himself acquainted with the thousand executions which come into the hands of the officer, so as to enable him to know whether the money is collected, and if collected whether it is paid, and in case of non-payment, to notify every plaintiff to *496 proceed against the constable. He is indeed in a most , . , . ... ... . . .„ . helpless and responsible condition. I he plaintiff in agreeing to leave his money in the officer’s hands, in effect, loans him the money, puts the security in great jeopardy, and seriously injures him. Having done so, I think it ought to be at his risk, and that he ought not to recover in his motion against the security. 7 Johns. R. 332.