Mr. Chief Justice Sharkey
delivered the opinion of the court.
The plaintiffs in error were sued as indorsers of a promissory note, and after verdict against them, moved for a new trial, which motion was overruled. The defence set up was, that the holder of the note had discharged the indorsers by giving time to the maker.
The question depends mainly on the evidence introduced on the trial, which is to the effect following: — The maker of the note testified, that about the 28th of March, 1840, he executed a note to the plaintiffs below for $31,593, payable three days after date, the consideration of which was sundry notes then held by the bank, on which he was liable, either as maker or indorser; his object being to concentrate all his indebtedness in one note. On being asked where the note given then was, he stated that it was in judgment in Louisiana, and that $2200 had been paid on the judgment by a sale of bank stock, and that the judgment was also a lien on certain promissory notes, given by R. C. Ballard to the witness, for property sold to Ballard, which notes were secured by mortgage. He also stated, that these notes were liable to be sold under execution. A transcript of the judgment in Louisiana was also introduced.
*36 To rebut this proof, the plaintiff below introduced Thomas Henderson, the cashier of the bank, who explained the transaction with Lillard, the maker of the note, in the following manner:— Lillard called on him and expressed a wish to take up all his liabilities to the bank, and proposed to confess judgment for the full amount due, and to bind thereby all of his property. On consultation with one or two of the directors, the witness agreed with Lillard, that when such a judgment should be confessed so as to bind all his property, and evidence thereof produced to the bank, the paper of Lillard should be given up, Lillard employing his own attorney, and paying all the expenses incident to the consummation of this arrangement. In order to effect the arrangement, Lillard called on the witness for a statement of the amount of his indebtedness, which was furnished. The agreement was entirely conditional, intended, and so understood, to depend upon the confession of a judgment which should bind all of Lillard’s property in Louisiana; and on the further condition, that this should be done at Lillard’s expense, and the bank notified. After this understanding took place, and before any confession of judgment, Lillard sold all of his property in Louisiana, consisting of land and negroes, to R. O. Ballard, which was the property intended to have been bound by the judgment. Some time before this understanding took place, Lillard delivered to witness two hundred shares of stock of the Commercial Bank of Manchester, to be held for him, as collateral security for all of his debts due to the bank. After the sale of the property to Ballard, the witness was informed that Lillard did confess judgment, and that an execution had issued, under which the bank stock was sold by the sheriff of Concordia for the sum of $2200, but the bank had never received any of the money. On the order of the sheriff of Concordia, the bank stock was delivered to Ballard. The witness never gave, nor did he agree to give any time whatever to Lillard. The memorandum was given at his request to enable him to carry out his own arrangement. The witness had no authority, by resolution of the board of directors or otherwise, to make' this arrangement, but was in the habit of making such *37 arrangements on consultation with some of the directors. The deposit of the bank stock as collateral security, occurred after the maturity of all of Lillard’s liabilities, and the bank never relinquished the right to sue on the notes at any time.
At the request of the counsel for the bank, the court charged the jury that the agent or cashier had no authority to bind the bank by any contract that would release parties from their notes. 2. To release an indorser, the engagement must be upon a good consideration, and binding, and one that will suspend the remedy. 3. That unless the judgment in Louisiana bound all of Lillard’s property, and the contract was ratified by the plaintiffs, the law is for them.
The kind of contract with the principal which will discharge the surety, is well defined and settled. The effect of giving time to the principal in a forthcoming bond, was considered by this court in the case of Newell & Peirce v. Hamer, 4 How. 684. It was decided, that a mere voluntary engagement to indulge the principal debtor, would not discharge the surety. There must be a positive and binding agreement, based upon some new and valuable consideration, which is sufficient to tie up the creditor, and prevent him from asserting any remedy, during the time for which the indulgence has been given. The same rule was holden to apply to indorsers of promissory notes. Wade v. Buckner, Stanton & Co., 5 How. 631. In this last case, a bill of exchange had been taken, payable at twelve months, and a receipt given expressing that the note was tobe credited with the proceeds of the bill ; and this was decided to be insufficient to discharge the indorser. See also McLemore v. Powell, 12 Wheat. 554.
Was there any such contract in this easel The evidence seems'to fall far short of establishing any contract whatever that was binding on the plaintiffs below for one moment, even assuming that Henderson was authorized to do all that he did do. Lillard states that he executed a note, but he does not state that he did so by request, or with the knowledge of the bank, or that it was ever delivered. His testimony is unsatisfactory. He omits to state anything of the transaction which led to the *38 making of the note. He merely says that he made such a note ; and that it was then in judgment in Louisiana. Henderson states the transaction in such a manner as to make it intelligible. It was a mere unexecuted promise to contract, on the performance of certain conditions. There was nothing in it binding. Lillard had promised to do certain things, and Henderson promised if they were done in a particular manner, he would deliver up the notes of Lillard. Lillard defeated the proposed settlement by selling his property. There was no consideration for this agreement; nor was there in fact any agreement to give time. Lillard does not state that there was, and Henderson states positively that there was not. Try this by the true test. Was there any period of time at which the bank was not at liberty to sue? There was not. When the proposed arrangement was spoken of, nothing was said about his giving a new note, and if by so doing his indorsers were discharged, then every indorser may be discharged in the same way. Lillard seems to have been the only actor in the matter. Even the money raised by the execution was never received by the bank.
But it is insisted that even if the indorsers are not discharged, still they are entitled to a credit for such an amount on account of the stock sold, as the amount of sale bears to the whole sum for which it was pledged as collateral security. If the bank had received the proceeds of sale, or if it had appropriated the collateral security, so much of the debt for which it was pledged would be extinguished ; but the bank received nothing. The sale seems to have been brought about by Lillard exclusively. The bank took no step in the matter. The stock was given up under a mistaken notion of the rights of the parties. If the sale was valid, then unquestionably the delivery was proper ; if it was invalid, then no title to the stock was acquired by Ballard, and the right is where it was before. The principle involved is, that a creditor who takes a collateral security for his debt, is bound to hold it impartially and justly, inasmuch as a surety who pays the debt, is entitled to be substituted to the rights of the creditor in using the security for his protection. In *39 such cases, if the security is lost by the negligence, or improper conduct of the creditor, the surety may bar the creditor of so much of his demand as he might have received from the security. Hayes v. Ward, 4 Johns. C. R. 123. This seems to be a matter of equity cognizance. The case from 3 Paige, 650, cited by counsel, decides that the whole of this doctrine depends upon the equitable principle that the creditor shall do no act to the injury of the surety. Tn the case cited from 1 Nott & McCord, the principle is adverted to, and it was said if the holder accept a deposit as security, and part with it without the consent of the indorser, he forfeits his claim upon the indorser; but the case before the court was not one of that description, and the doctrine, to 'its full extent, was not discussed. It is very difficult to apply this doctrine in the present case for several reasons. No act of bad faith is shown, nor is the security lost to the indorsers. Either the title to the stock is not changed by the sale in Louisiana; or if it is changed, the proceeds of sale are still within their reach if they should pay the debt. The bank seems to have disclaimed any interest in the judgment, and, under the circumstances, has an undoubted right to do so. But if it should be a valid judgment, then the sureties or indorsers may be entitled to all the benefits it can secure. The principle can only apply where the benefit of the security is lost to the indorsers by the improper conduct of the holder, and we cannot feel warranted, in this instance, in saying that it has been lost. If the indorsers relied on the execution sale as a satisfaction of so much of the debt, they should have pleaded it as a payment of so much.
But it is also said, that the court erred in charging the jury that the agent or cashier has no authority to bind the bank by any contract that would release parties from their notes. In the case of The State v. The Commercial Bank of Manchester, decided at the present term, we had occasion to inquire how far the acts of the cashier are binding on the bank, and have nothing to add. The court, however, at the • request of the counsel for the defendants below, charged the jury that if they believed the cashier acted in the premises on consultation with *40 two or more of the directors, his acts are binding on the bank. This last charge is a modification of the first, and it was so framed as to meet fully the evidence given in. Henderson testified, that after consulting with one or two of the directors, he agreed with Lillard, that when the judgment should be confessed so as to bind all his property, his paper should be given up. On the evidence the charge could not have been given in terms more favorable to the defendants. It is evident the verdict was.not predicated on a want of power in Henderson to bind the bank, but on the total absence of any binding contract. This is the more manifest from the several other charges given at the request of defendants below, which could not, under the evidence, have been more favorable to their cause. The court gave every charge they requested, and still the jury found against them, and could not, as we think, have found differently.
The judgment must be affirmed.