### MOUTON, Governor, for the use of Halsted, *v.* NOBLE et al.

Where goods have been sold by an auctioneer for cash, and the owner accepts from the latter his notes for the proceeds payable at certain periods after date, without the consent of the sureties in the auctioneer's bond, they will be discharged, though there was no proof of any consideration for accepting the notes, or allowing the time granted to the principal. C. C. 3032. The acceptance of the notes is an agreement to wait till their maturity, binding on the creditor. A sufficient consideration will be presumed from the conduct of the parties.

The requiring a small pecuniary consideration to support an agreement, is a mere fiction, unknown to the civil law and to the laws of this State.

In contracts of mutual interest, the cause of the engagement is the thing given or done, or stipulated to be given or done, or the risk incurred by one of the parties; and in contracts of benificence, the liberality which one of the parties wishes to extend to the other, is a sufficient consideration.

Where an engagement is without cause or consideration, or, what is the same thing, where the cause is false, the engagement and the contract based on it, are null. C. C. 1887. Money paid under such an agreement may be recovered back, by the action *condictio sine causâ.*

Civilians use the term *cause* in relation to obligations, in the same sense that the word *consideration* is used in the jurisprudence of England and the United States. It means the motive, or inducement, to the agreement.

Under the laws of this State, no consideration need be expressed in an agreemet. C. C. 1888.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

The sureties of *Noble,* an auctioneer, appealed from a judgment against them, in an action to recover a balance due to *Halsted,* for goods sold by their principal.

The judgment of the court was pronounced by

EUSTIS, C. J. This was an action brought against the defendant, *Noble,* an auctioneer, and the other defendants as his sureties on his official bond, for an amount of goods sold by him at auction, the proceeds of which had not been paid over to the plaintiff, *Halsted,* for whom they were sold. The sureties plead that they have been discharged, by time having been given by the plaintiff to the principal, *Noble.*

It appears that goods were sold at auction by *Noble,* an auctioneer, for the plaintiff, and that, when they made a settlement, on the 7th of February, 1845, *Noble* fell in debt to him in the sum of $840 60, for which he took *Noble's* six notes, payable at different times, to his order, for $790 60 cents, and received $50 in cash.

The judge of the Commercial Court held that, as no consideration was proved for receiving the notes, or for the time allowed, the agreement to give time

was not binding on the creditor, and did not discharge the sureties, and decided that the sureties were still liable, on the authority of *McLemore* v. *Powell*, 12 Wheaton, 557, and of Chitty on Bills, p. 441, and cases there cited.

The case of *McLemore* settles no principle, except that the holder of a bill of exchange is not bound by a promise to the drawee for delay, made without any consideration; and Mr. Chitty, in stating that an adequate consideration is necessary to support an agreement on the part of the holder of the bill to give time to the drawee, adds: " But it is submitted that the mere receiving further security, payable at a future day, would in general imply an engagement to wait till it becomes due." The judge gave this decision under the authorities, and in opposition to his own convictions as to the law. We believe it would have been safer for the judge to have been guided by his own judgment, than to have followed these authorities, in deciding this case; they are evidently not applicable to the state of facts which it presents.

This is a case in which, on the settlement of an open account, a division is made of the debt, part is paid cash, and for the rest six notes, payable to order, are given for the different portions into which the debt is divided. The position of the plaintiff is, that there is, in these facts, no valid engagement to wait for the falling due of any of the notes, but that the whole debt may be sued for *instanter*, by reason of their being no legal consideration to support the agreement to give time. In the case of . *Gould* v. *Robson*, 8 East. 576, Lord *Ellenborough* says: " As to the taking part payment, no person can object to it, because it is in aid of all the others who are liable on the bill; but here the holder did something more ; he took a *new bill* from the acceptor, and was to keep the original bill till the other was paid. This is an agreement that, in the meantime, the original bill should not be enforced; such is at least the effect of the agreement, and, therefore, I think time was given." Fonblanque's Equity 345, and notes. 2 Blackstone's Com. 445, and notes.

In this case the debt was divided, and the several portions of it thrown into the form of a negotiable instrument. From these facts, what but an agreement to wait until their maturity can be implied ? There is some subtlety in the law concerning the consideration necessary to support an agreement, which has escaped us, if, in a case like this, a sufficient consideration is not necessarily to be presumed from the conduct of the parties. To set at naught an engagement of this kind would certainly be a breach of faith ; and a rule which puts it thus in the power of a party to trifle with his engagement, which he has induced his debtor, and perhaps his creditors, to act upon, we cannot recognize as forming a part of our jurisprudence, as we consider it equally repugnant to reason, to good faith, and to those principles upon which our system of law is founded. The requiring a small pecuniary consideration to support an agreement, is a mere fiction, which the civil law has never adopted.

An obligation without a cause, or with a false, or unlawful cause, can have no effect. Civil Code, art. 1887. Pothier explains the sense of this principle, and describes what is meant by a want of consideration necessary for the validity of an obligation.

In contracts of mutual interest, the cause of the engagement is *the thing given, or done, or engaged to be given or done, or the risk incurred* by one of the parties ; and in contracts of benificence, the liberality which one of the parties wishes to extend to the other, is a sufficient consideration. But when an engagement has no cause, or consideration, or, what is the same thing, where the

MOUTON
v.
NOBLE.

cause for which it is contracted is *false*, the engagement is null, and the contract based on it is also null, and cannot be enforced by an action. Money paid under such an agreement can be recovered back by the action *condictio sine causâ*.

The civilians use the term *cause* in relation to obligations, in the same sense as the word consideration is used in the jurisprudence of England and the United States. It means the motive, the inducement to the agreement—id quod inducet ad contrahendum. 6 Toullier, 166.

By our Code no consideration is required to be expressed in agreements. Civil Code, art. 1888. The gratuitous remission of a debt is as valid as a release for a valuable consideration, and may be expressed or implied. Civil Code, art. 2195.

The pactum remissorium—pactum de non petendo—was binding under the Roman law, and all that was required to give it validity was a simple convention or agreement. Mackeldey, § 499. Vide Institutes of the Civil Law of Spain, lib. 2, tit. 8, p. 159; and lib. 10, tit. 1, law 1 of the Novissima Recopilacion. It would always avail the debtor as an exception to the action instituted by the creditor. Pothier on Obligations, § 381.

The rule prevailing in the English and American courts, that certain contracts imply a consideration from the mere form, and that certain others carry with them no such implication, there is no propriety in our adopting, because it is exclusively arbitrary in its character.

The maxim taken from the Roman law—*ex nudo pacto non oritur actio*, has been strangely misapplied in the very general use that is made of it. The action by the Roman law was not originally given on the *pact*, but on the stipulation only, which reduced the undertaking to something positive and certain; but no consideration, in the sense in which the word is generally used, was necessary to support a stipulation under that system. Afterwards, in the progress of jurisprudence, actions were allowed to be brought on *pacts;* those on which an action could be brought were styled *pacta vestita*, but the *pacta nuda* were available by way of exception.

Article 3032 of our Code provides that the prolongation of the term, without the consent of the surety, operates a discharge of the latter. This article is not found in the Napoleon Code. The authors of that Code adhered to the rule of the Roman law, and the opinions of Pothier, Vinnius and Voet, that the extension of the term to the principal debtor did not discharge the sureties. Vide Pothier on Obligations, 381. 18 Duranton, No. 384. Article 2039 of the Napoleon Code gives to the surety his action against the principal debtor, notwithstanding the prolongation of the term granted him by the creditor; by our Code, that fact discharges the surety.

We are bound to say that, from the division of the debt and the receiving of notes payable at determinate periods, resulted a valid obligation on the part of the creditor, not to sue on his original claim before a default in the payment of one of the notes on the part of the debtor; and that, by thus giving time to the principal debtor, without the consent of the sureties, the latter are discharged.

Judgment reversed; and judgment for the defendants, with costs in both courts.

*T. A. Clarke*, for the plaintiff. *Conklin*, for the appellants.