### E. Y. BROWN v. C. C. FOUNTAIN ET AL.

#### No. 151.

1. **Release of Surety by Extension of Time.**—A mere treaty between the holder and the principal in a promissory note, not perfected, would not discharge the sureties; nor would a promise without consideration that could not be enforced, nor a promise upon a condition not complied with.

2. **Same—Fact Case.**—See facts held to evidence a contract for an extension of time on a promissory note, between the holder and the principal, by which the sureties were released.

3. **Same.**—It is the duty of the holder of an obligation in which sureties are bound, to see that they consent to an extension requested by the principal, before the extension.  If without assent of the sureties, they will be released.  See example.

4. **Case Adhered to.**—Mann v. Brown, 71 Texas, 244, adhered to, as to validity of an agreement for the extension of time upon consideration of payment of usurious interest by the principal debtor.


APPEAL from Coleman.    Tried below before Hon. J. W. TIMMINS.


*J. C. & H. C. Randolph,* for appellant.—1.  A conditional agreement to extend, or a conditional extension of time of payment of a promissory

note, granted by the holder to the principal maker, will not relieve the sureties on said note where the condition on which such agreement is based is, that it shall be subject to the approval of the sureties; and where the evidence presents such an issue the jury should be instructed upon that issue. 2 Dan. on Neg. Inst., sec. 1318; 2 Rand. on Com. Paper, secs. 956, 957; Wilson v. Powers, 131 Mass., 539; Harnsberger v. Geiger, 3 Grat., 144; Barber v. Burrows, 51 Colo., 404; Wheeler v. Washburn, 24 Vt., 293.

2. Sureties on a note are not released by a mere extension of time, but there must be such a binding contract between the principal and payee in the note as to preclude the payee's enforcing the collection of the note upon demand of the sureties. Orne v. Young, Holt's N. H., 84; United States v. Hodge, 6 How., 283; 2 Dan. on Neg. Inst., sec. 1313; Brandt on Surety., sec. 329; Rucker v. Robinson, 38 Mo., 154; Newell v. Hamer, 35 Am. Dec., 415; Ripley v. Greenleaf, 2 Vt., 129; McCune v. Belt, 38 Mo., 281; Davis v. Graham, 29 Iowa, 514; Bank v. Hill, 10 Pick., 129.

*M. A. Martin* and *Will L. Vining,* for appellees.—The payment of interest in advance is a sufficient consideration for an extension of time, and it is immaterial whether such payment be in the nature of a bonus or the payment of legal interest before it is due. Mann v. Brown, 71 Texas, 241; Burke v. Cruger, 8 Texas, 70; Knapp v. Mills, 20 Texas, 123; Wybrants v. Lutch, 24 Texas, 309; Pilgrim v. Dykes, 24 Texas, 384; Claiborne v. Birge, 42 Texas, 98; Yeary v. Smith, 45 Texas, 57; Plow Co. v. Walmsley, 11 N. E. Rep., 232; 32 N. W. Rep., 424; 3 S. E. Rep., 817; 17 N. E. Rep., 105; Kenningham v. Bedford, 1 B. Mon., 326.

COLLARD, ASSOCIATE JUSTICE.—Suit by E. Y. Brown, the appellant, against appellees, C. C. Fountain, R. L. Dunman, J. J. Jackson, and C. M. Mann, on their joint and several promissory note for $3100, bearing interest at 12 per cent per annum from date, July 1, 1882, due twelve months after date.

On the note are endorsed payments as follows: " $372. Received on the within note $372, it being the interest to July 1, 1883; this June 18, 1883. $1472. Received on the within note $1472, this July 1, 1884."

Besides a general denial, defendants Mann, Dunman, and Jackson set up as a defense, that they were only sureties on the note, and that in May or June, 1883, before the maturity of the note, Brown, the payee, agreed with Fountain to extend the time of the payment of the note one year, upon the payment by the latter of $372 interest then due, and the further sum of $93 additional interest at 3 per cent on the amount of the note, which sums of money were then paid by Fountain; and in consideration thereof, to-wit, the $93 extra interest, plaintiff extended the time of the payment of the note as agreed—all done without the knowledge

or consent of the sureties; and that at the maturity of the note, defendant Fountain was solvent and able to pay the full amount due on the note, and would have paid the same if the time had not been extended.

The alleged sureties further set up, that a similar agreement was made by plaintiff and Fountain on July 1, 1884, to extend the time of payment of the note upon the payment by Fountain of $372 interest then due, $1100, part of the principal, and $60 additional interest, which amounts were paid and the time of payment extended for one year, to the 1st of July, 1885, which agreement was made without the knowledge or consent of defendant sureties.

They further say, that at the time of the last extension, 1st July, 1884, Fountain was able and would have paid the amount due on the note had plaintiff demanded it; that since the extension of time alleged, Fountain had become insolvent and can pay nothing on the note; wherefore they ask to be discharged from all liability on the same.

Mrs. Mary M. Mann, having qualified as survivor of the community estate of herself and her husband, C. M. Mann, who died after suit, adopted the foregoing answer, and set up other defenses, which need not be noticed.

Plaintiff replied, that if he entered into any agreement to extend the time of payment of the note, it was done with the express condition that it was not to be valid or binding unless the sureties consented thereto and ratified the same.

The trial resulted in verdict and judgment for plaintiff against Fountain for $3500, and in favor of Dunman, Jackson, and Mann against plaintiff, who has appealed.

The note was executed as alleged by plaintiff, but it was proved that Dunman, Jackson, and Mann, though appearing by the face of the note to be bound jointly and severally, were in fact sureties.

The time of payment of the note was extended, as alleged by the sureties, upon the payment of amounts stated as additional interest to the 12 per cent called for in the note.

Plaintiff's testimony was to the effect, that when he loaned the money to Fountain for which the note was given, the agreement between them was that Fountain was to pay him 15 per cent interest; the 3 per cent above the 12 per cent called for in the note was to be paid by Fountain outside of the contract as stated in the note; that in May or June, 1883, he received a letter from Fountain requesting extension of time of payment, and he replied that he thought he could do so, if it was agreeable to the parties to the note, but that he intended going to Coleman soon and would see further about it; that soon afterwards—a short time before the maturity of the note—he came to Coleman and saw Fountain; did not see Mann; did not recollect that he saw Dunman, but thought he saw Jackson. Fountain requested extension for one year, and he (Brown)

agreed to it, if it should be agreeable to all the parties, and he, Fountain, would pay the additional 3 per cent in advance, and the 12 per cent interest then due; but that it must be with the consent of all the parties, as he knew if the time were extended without their consent, they, being sureties, would be released; that Fountain then paid the interest due and the 3 per cent additional, according to the original contract. That about June 18, 1884, Fountain again asked for another year's extension and would pay the 18 per cent. Plaintiff thought he could not do so, but replied that if he did, it would be under the old contract, and that the sureties must consent to it; that afterwards, during plaintiff's same visit to Coleman, Fountain paid him the 12 per cent interest then due, the 3 per cent bonus in advance, and $1100 on the principal, and plaintiff extended the time of payment of the balance due on the note for one year, with the understanding that the sureties should agree to it.

Plaintiff testified, that he afterwards saw Jackson, who requested him to extend the time, as Fountain was hard pressed, and that he could pay out if his creditors would be easy with him. Nothing was done until in July, 1885, when plaintiff again demanded payment of the note. Plaintiff never heard that the sureties objected to the extension of time on the note until suit was brought, and at no time unqualifiedly agreed to extend the time, but at every extension agreed to do so if it was agreeable to the sureties, and reserved the right to proceed on the note if the sureties demanded that suit should be brought. Plaintiff did not see the sureties, except Jackson, as stated, or ascertain from them whether they consented to the extension of time. He says he thought that was their business.

Sureties Jackson and Dunman both testified that they knew nothing of the extension of time on the note until a short time before suit. Dunman thought it was paid, and neither of them ever consented to the extension or authorized it. Neither of the sureties ever demanded that Brown enter suit on the note.

Fountain did not inform his sureties that the time of payment was extended on the note. He admitted on cross-examination that the amount he paid for the extension was according to his original agreement with Brown, and says it was extended because he paid the back interest. He also says that the rate of interest was not increased because of the extension. He also admitted that he had in former depositions testified that Brown said he would grant the extension if he would pay the 3 per cent, and it would be agreeable to all the parties.

The sureties at no time demanded that plaintiff should sue on the note. Fountain was solvent and could have paid the note at the time of the extension; but failed in 1884, and could not pay.

Giving credit to all the testimony of plaintiff not in conflict with other testimony (there being in fact no material conflict), and giving to the verdict the force it should have as decisive of the facts, we conclude that

plaintiff extended the time of the payment of the note as alleged by defendant sureties for a valuable consideration, without the knowledge or consent of either of them.    Other facts are as stated above.

*Opinion.*—Appellant complains of the ruling of the court in refusing to allow him to prove by Fountain that before the making of the note it was understood between them that the latter was to pay 15 per cent interest per annum.

If the excluded testimony were admissible or material, no injury was done, because proof was afterwards made of the fact.

But it may be admitted, that the fact was conclusively proved; it could not change the result of the suit.    The agreement or understanding could not affect the sureties; they were not parties to it; they were bound only by the terms of the note and not by a separate understanding of Brown and Fountain.    Such an agreement was usurious and illegal, and could not have legal effect as a promise if Fountain had resisted it; it could certainly as a promise have no effect upon the sureties.    Such interest was illegal and could not become an obligation; it was not a legal obligation when paid, and only served when paid as a valuable consideration for the forbearance alleged.    The payment of the amount as usurious interest was the same as if it had been paid independently of any original agreement, or any agreement except that of the indulgence.    The parties to it at the time of payment made it the consideration of the extension of payment, and it would have that effect, just the same as the payment of any other amount not due, as for example, the payment of legal interest before it fell due.    Both of these questions were decided on the former appeal of this case.    Mann v. Brown, 71 Texas, 244, and authorities cited.

But appellant says, that his agreement to extend the time of payment was subject to the approval of the sureties, and as they did not approve it, it was not binding, and therefore could not discharge them.

The court refused a charge requested by appellant embodying the foregoing proposition.    In this there was no error.    The facts did not warrant the charge.

A mere treaty for delay between the holder and the maker of a promissory note, not accepted, would not discharge the sureties.    McLemore v. Powell, 12 Wheat., 554; 3 Price Exch., 521.    Or a *promise* without consideration that can not be enforced, or a *promise* upon a condition which is not complied with, will not release.    Dan. on Neg. Inst., secs. 1318, 1319.

But in this case there was not a pending treaty for delay; it was a contract, complete in all respects, to delay for a time specified, for a valuable consideration paid and accepted, and the time was extended as agreed.    Dan. on Neg. Inst., secs. 1318, 1319.

The delay was granted at the time of the agreement, and the time was

actually extended. The obligation of the note was changed as to time of maturity, first for one year and again for another year, without the consent of the sureties. The condition, that they were to approve it, had no purpose or meaning in the face of the fact that the extension was granted anyhow. Plaintiff acted without consulting them, accepted the consideration, and granted the time, which elapsed without their consent. It was his duty to see that they consented to the agreement before he made it and allowed the time to run in pursuance thereof, and not " their business," as he thought. We add the following authorities as bearing upon the views herein expressed: Burke v. Cruger, 8 Texas, 67, 68; Knapp v. Mills, 20 Texas, 124; Wybrants v. Lutch, 24 Texas, 309; Pilgrim v. Dykes, 24 Texas, 384; Claiborne v. Birge, 42 Texas, 98; Yeary v. Smith, 45 Texas, 57.

As stated by appellant, it was not the duty of the plaintiff to notify the sureties when the note fell due; and it is also true that a mere indulgence of the principal debtor will not exonerate the sureties; they can, if they see proper, compel suit. Burke v. Cruger, supra; Rev. Stats., arts. 521, 522. This is not such a case, and it would have been improper for the court to have charged the law upon that subject.

The court below, as he should have done, submitted to the jury the issue as to whether the sureties consented to change as to the maturity of the note, also the issue as to whether such change was made, in which there was no error; and the jury having found the facts in favor of the sureties upon evidence, we may say uncontradicted, their verdict should not be disturbed.

The vital questions in this case were decided on a former appeal against the appellant, and in the last trial, upon a fair submission of the case, the issues were decided against him. We think they were correctly decided; and finding no error in the same, conclude the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Delivered April 26, 1893.